IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| ANDREW IVANCHENKO, M.D., P.C., an Illinois corporation, and ANDREW IVANCHENKO, M.D., individually | ) ) ) ) |
|  Plaintiffs, | ) No. 16 C 9056 ) ) |
| v. | ) Judge Virginia M. Kendall ) |
| SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services, and ANDREW SLAVITT, Acting Administrator for the Centers for Medicare and Medicaid Services, | ) ) ) ) ) ) |
|  Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiffs, a suburban Chicago doctor and his medical practice, sued the Secretary of the Department of Health and Human Services (HHS) and the Acting Administrator for the Centers for Medicare & Medicaid Services (CMS) seeking: (1) a preliminary injunction[1] enjoining the agency from recouping approximately $14,000 in Medicare funds per week while they await a *de novo* hearing by an Administrative Law Judge (ALJ) into Plaintiffs' alleged overbillings; and (2) a writ of mandamus ordering the Secretary to ensure that Plaintiffs and other healthcare providers receive such a decision by an ALJ within the 90-day time frame outlined in the Medicare Act. (Dkt. 1 at 12.) Defendants have moved to dismiss the suit pursuant to Rule 12(b)(1), arguing that the Court lacks subject-matter jurisdiction to consider Plaintiffs' plea for

---

[1] In addition to their original request for a preliminary injunction and a writ of mandamus, Plaintiffs also sought a temporary restraining order. After the parties agreed to a temporary reduction in the amount of funds that would be recouped by the agency, however, the Court granted Plaintiffs' oral motion to withdraw their motion for a TRO. (Dkt. 16.)

relief because they have failed to exhaust their administrative remedies. For the reasons discussed herein, Plaintiffs' complaint [1] is dismissed.

## FACTUAL ALLEGATIONS

In evaluating a motion filed pursuant to Rule 12(b)(1), the Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008) (citation omitted). Plaintiff Andrew Ivanchenko, a physician, has operated a medical clinic providing pain relief services in Chicago's suburbs for over 10 years. (Dkt. 1 ¶ 12.) Over 40% of his practice's income (approximately $14,000 per week) is derived from the treatment of Medicare Part B patients. (*Id.* ¶ 15.) Without the revenue received from treating Medicare patients, Ivanchenko's practice cannot remain in operation. (*Id.* ¶ 16.)

In September 2013, CMS retained Cahaba Safeguard Administrators, LLC (Cahaba), a Medicare contractor, to perform an audit of Plaintiffs' Medicare billings. (Dkt. 1 ¶ 18.) Cahaba's review of Plaintiffs' Medicare billing was routine and not prompted by any allegations of wrongdoing. (*Id.*) Cahaba, which was paid on a contingent basis,[2] audited 30 patient files and determined that all of the claims included overbillings and should have been denied. (*Id.* ¶¶ 19-20.) Cahaba then extrapolated the 100% overbilling rate from the sample of patient files it reviewed to all of Plaintiffs' Medicare billings between January 2010 and August 2013, and determined that Plaintiffs should repay HHS $2,794,380.84. (*Id.*) Plaintiffs submitted a first-level administrative appeal – a redetermination of the overbilling by the contractor, which was denied. (*Id.* ¶ 22.) Plaintiffs then filed a timely second-level administrative appeal for reconsideration, which was considered by a different contractor, which upheld the initial findings of overbillings but resulted in the application of a different recoupment formula and a slightly

---

[2] In their Reply, Defendants dispute that Cahaba was paid on a contingent basis. (*See* Dkt. 18 at 5, n.2.)

lower repayment amount. (*Id.* ¶¶ 23-24.) Following the denial of the second-level administrative appeal, HHS informed Plaintiffs that it would start recouping the overpayments by withholding approximately $14,000 per week in Medicare reimbursements from Plaintiffs. (*Id.* ¶ 26.) Then, in June 2016, Plaintiffs' timely filed their third-level administrative appeal, seeking a *de novo* review of the overbilling determination by an HHS ALJ. (*Id.* ¶ 26.) Although the Medicare Act details that ALJ decisions should be rendered within 90 days of receiving an appeal, the Agency's ALJs have been inundated with similar administrative appeals and the Plaintiffs' third-level administrative appeal will apparently not be heard for several years. (*Id.* ¶¶ 8-10, 34.) Because recoupment payments have already started, Plaintiffs assert that the medical practice will close long before the administrative appeal will be heard, necessitating the injunction halting the recoupment of approximately $14,000 per week. (*Id.* ¶¶ 30-31.) Plaintiffs also request that the Court issue a writ of mandamus prohibiting Defendants from continuing to operate an administrative scheme that deprives them and other providers of the opportunity to a timely decision by an ALJ, and that the Court order the Defendants to take immediate action to ensure that Plaintiffs and similarly situated providers receive decisions from an ALJ with 90 days of receiving a request for a hearing. (*Id.* at 12.)

## **LEGAL STANDARD**

Defendants assert that the Court lacks jurisdiction and must dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(1). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). "In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper."

*Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 289 U.S. 178, 189 (1936)).

## **DISCUSSION**

Medicare, a federal health insurance program for the elderly and disabled, processes over a billion claims for payment each year. Due to the volume of claims, Medicare claims are often paid up front, and sometime later, Medicare contractors may conduct post-payment audits to ensure payments were made in compliance with Medicare's payment criteria. If the audit determines that Medicare overpaid a provider for some reason, the money is recouped from subsequent payments paid to the provider.

The Medicare Act establishes a four-level administrative appeals process for providers and beneficiaries to challenge adverse initial determinations made by the contractors. 42 U.S.C. § 1395ff. After receiving an initial adverse determination, a healthcare provider can file their first level administrative appeal before the Medicare Administrative Contractor, which is typically the contractor that made the initial determination. 42 U.S.C. § 1395ff(a)(3). If unsatisfied with the redetermination, the provider can file a second-level administrative appeal, the "reconsideration." Reconsiderations are conducted by Qualified Independent Contractors (QIC)—contractors that did not take part in the initial determination. *Id.* § 1395ff(c). If the healthcare provider wishes to appeal the reconsideration, it may submit a third-level administrative appeal—a *de novo* review and hearing by an ALJ. *Id.* § 1395ff(b)(1)(E)(i), (b)(1)(E)(iii), (d)(1)(A). The Medicare Act directs the agency to conduct and render ALJ decisions within 90 days of the request for a hearing. *Id.* § 1395ff(d)(1)(A). The fourth and final administrative level of Medicare appeals is another *de novo* review by the Departmental Appeals Board (DAB), which can also conduct hearings. *Id.* § 1395ff(d)(2). The Act stipulates that the

DAB should render a final decision or remand the case to the ALJ for reconsideration within 90 days of the request for appeal, or 180 days in cases where there was no ALJ decision and the case was escalated to the DAB. 42 C.F.R. § 405.1100. Finally, after completing this four-level administrative appeal process, healthcare providers may seek judicial review. 42 U.S.C. § 1395ff(b)(1)(E)(i), (b)(1)(E)(iii); 42 C.F.R. § 405.1006(c).

The Medicare Act also provides for "consequences of failure to meet" several of the administrative appeal deadlines, by allowing claimants to escalate their appeal to the next level of the administrative appeals process if the relevant reviewing body does not comply with the time frame set forth in the Act. For instance, if the ALJ fails to render a decision within 90 days of the request for an appeal, the claimant may escalate its appeal to the fourth-level DAB appeal. 42 U.S.C. § 1395ff(d)(3)(A). Similarly, if the DAB does not render a timely decision, the claimant may escalate its appeal to the district court. *Id.* § 1395ff(d)(3)(B). The Act precludes claimants from filing actions in district court until they have received a final decision from the DAB or escalated their appeal after not receiving a timely decision from the DAB. *See Id.* § 1385ff(d)(3)(B); 42 U.S.C. § 405(g)-(h); 42 C.F.R. § 405.1130.

## I. Preliminary Injunction

Plaintiffs seek a preliminary injunction on the basis that the Secretary's delay in rendering a timely ALJ decision violates the Medicare Act and the Due Process Clause of the Fifth Amendment. While the Court sympathizes with Plaintiffs' plight, the Court lacks subject-matter jurisdiction to consider their request for injunctive relief because they have failed to exhaust their administrative remedies. "Judicial review of claims *arising under* the Medicare Act is available only after the Secretary renders a 'final decision' on the claim." *Heckler v. Ringer*, 466 U.S. 602, 605 (1984) (emphasis added); 42 U.S.C. §§ 405(g)(h). This means that

5

parties whose claims "arise under" the Medicare Act can seek judicial review only after exhausting the full four-step administrative review process, or escalating their claims after the statutory periods for review have elapsed because "Title 42 U.S.C. § 405(h), to the exclusion of 28 U.S.C. § 1331 (federal-question jurisdiction), makes § 405(g) the sole avenue for judicial review of all "claim[s] arising under" the Medicare Act." *Id*. at 2013-15; *see also Michael Reese Hosp. & Med. Ctr. v. Thompson*, 427 F.3d 436, 440 (7th Cir. 2005) ("Section 405(h) precludes federal question jurisdiction unless the Medicare program's administrative review process has been exhausted.").

The Medicare Act's "exhaustion requirement serves an important purpose, preventing the premature interference with agency processes so that the agency can function efficiently and can correct its own errors, as well as affording the parties and the courts the benefit of the agency's experience and expertise and compiling a record which is adequate for judicial review." *Michael Reese Hosp. & Med. Ctr.*, 427 F.3d at 441. The Supreme Court has held that the Medicare Act's administrative procedures are the sole remedy when an "individual seeks a monetary benefit from the agency (say, a disability payment, or payment for some medical procedure), the agency denies the benefit, and the individual challenges the lawfulness of that denial," as is the case here. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000). This "claims channeling" function extends to constitutional challenges, including Plaintiffs' due process challenge and corresponding request for injunctive relief.[3] *Id.*

Plaintiffs do not dispute that their claims "arise under" the Medicare statute. *See Ringer*, 466 U.S. at 615; (Dkt. 1 ¶ 5.) Furthermore, there is no question that Plaintiffs have failed to exhaust their administrative remedies. In fact, Plaintiffs concede that they have only completed

---

[3] In addition to alleging that the delay in receiving an administrative hearing violates the Medicare Act, Plaintiffs also allege that it also violates the Due Process Clause of the Fifth Amendment.

the first two administrative appeals in the four-level administrative appeals process. They have not alleged that they have received a final decision from the DAB or escalated their appeal past the ALJ or DAB appeals stages. Since they filed their request for an ALJ hearing in June, more than 90 days have elapsed, entitling them to escalate their appeal to the fourth level of the administrative appeals process – DAB review. If they escalated their administrative appeal to the DAB and were not heard in another 180 days, they would then have statutory authority to challenge the adverse determination in federal district court. Because they have not complied with this process, the Court lacks jurisdiction to consider their plea for injunctive relief. As such, they are obligated to follow the administrative process outlined in the Medicare Act.

The only opinion that Plaintiffs have cited in support of their jurisdictional argument came from a district court in the Southern District of Georgia, which recently imposed a temporary restraining order against the same defendants under similar circumstances. *See Hospice Savannah, Inc. v. Burwell*, No. 415CV00253JRHGRS, 2015 WL 8488432, at *1 (S.D. Ga. Sept. 21, 2015) (imposing TRO against HHS from recouping $8.6 million in alleged overbillings based on a review of 100 claims, where Plaintiff completed only two of the four administrative appeals). *Hospice Savannah*, however, does not support the implementation of a preliminary injunction here. First, the *Hospice Savannah* Court wholly failed to address the jurisdictional issues that are in central to the current dispute. Second, the *Hospice Savannah* Court was not bound by Seventh Circuit law that clearly deprives the Court of jurisdiction to consider Plaintiffs' requests.

## II.     Mandamus Jurisdiction

In addition to their request for a preliminary injunction, Plaintiffs also seek a writ of mandamus ordering the Secretary to ensure that Plaintiffs and other providers receive timely ALJ

decisions. (Dkt. 1 at 12.) "Mandamus is a 'drastic' remedy that must be reserved for 'extraordinary situations' involving the performance of official acts or duties." *Cumberland Cty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016) (citation omitted). District courts have original jurisdiction over all actions "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.A. § 1361. "[T]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler*, 466 U.S. at 616. (reversing circuit court's determination that district court had jurisdiction over claim for benefits because administrative appeals had not been exhausted, and also finding that exhaustion would not be futile). "If a plaintiff's allegations survive *Ringer's* jurisdictional threshold, three elements must be met in order for the court to issue a writ: '(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available.'" *Ctr. for Dermatology & Skin Cancer, Ltd.*, 770 F.3d at 589 (quotation omitted).

While the Supreme Court has not addressed whether mandamus relief is available at all for claims under the Medicare Act, the Seventh Circuit has twice found that the Medicare Act's exhaustion requirements applied to and precluded subject-matter jurisdiction in similar requests for mandamus relief. *Heckler*, 466 U.S. at 616. In fact, the Seventh Circuit has noted that "controlling authority from the Supreme Court and this Circuit is airtight that a litigant may not circumvent the administrative appeals process by seeking mandamus." *Ctr. for Dermatology & Skin Cancer, Ltd.*, 770 F.3d at 590.

One of the cases comprising this controlling and airtight authority is *Michael Reese Hospital and Medical Center v. Thompson*. 427 F.3d at 436. There, the Seventh Circuit affirmed the district court's determination that it lacked subject-matter jurisdiction over a hospital's request for mandamus relief related to the withholding of Medicare repayments because "exhaustion of administrative remedies is a prerequisite of subject matter jurisdiction under both the federal question and mandamus theories, and Michael Reese failed to exhaust the review process for its FY 1986-90 challenges." *Id.* at 443.

In a more recent opinion, the Seventh Circuit found that that the district court lacked subject-matter jurisdiction to consider an indicted doctor's request for a writ of mandamus compelling the Secretary to process claims submitted for reimbursement because the doctor had failed to exhaust his administrative remedies. *Ctr. for Dermatology & Skin Cancer, Ltd.* 770 F.3d at 590 ("Dr. Kolbusz's failure to exhaust Medicare's administrative appeals process precludes subject-matter jurisdiction of his mandamus action."). In that case, the doctor filed suit in federal court after proceeding to the third level in the administrative appeals process, like the Plaintiffs here. *Id.* at 589. In an attempt to circumvent the exhaustion requirement, the doctor argued that his claim was not for benefits, but rather a challenge to the procedures for processing claims. *Id.* The Seventh Circuit rejected this argument because "the exhaustion requirement is still applicable to procedural challenges," and reiterated that "a litigant may not circumvent the administrative appeals process by seeking mandamus." *Id.* at 590. The Seventh Circuit also noted that the only time it has issued a writ of mandamus under similar circumstances was when a party had pursued all possible administrative appeals. *Id.* The doctor went on to argue that he effectively exhausted his remedies because the statute required that the underlying claims be paid within a certain amount of time. *Id.* The Seventh Circuit found that

the payment deadline did not apply to claimants like the indicted doctor and noted in dicta that, "[a]t some point the inaction of Congress or the Secretary may result in a due process violation where the extraordinary remedy of mandamus is required to compel governmental action." *Id.* at 591.

Plaintiffs argue that their circumstance is the one contemplated by *Center for Dermatology and Skin Cancer, Ltd.* as appropriate for consideration for mandamus relief because the Medicare Act requires ALJs to render decisions within 90 days. In support of their argument, Plaintiffs point to a recent D.C. Circuit opinion, *American Hospital Association v. Burwell*. 812 F.3d 183, 187 (D.C. Cir. 2016) (*AHA*). There, an association of hospitals with a significant amount of money tied up in the same administrative appeals process sought a writ of mandamus to compel the Secretary to act within the time frames outlined by the statute. *Id.* at 185. Applying an analytical framework not employed by the Seventh Circuit, the D.C. Circuit reversed and remanded the district court's dismissal of a request for a writ of mandamus for lack of jurisdiction, and found that the Act's deadlines for administrative review are mandatory and that escalation does not provide an adequate remedy because the District Court's review is deferential, in comparison to an ALJ's *de novo* review. *Id.* at 190-91.

Although the Court is sympathetic with Plaintiffs' plight, their failure to exhaust their administrative remedies precludes jurisdiction to consider their claims for mandamus relief. First, controlling precedent from the Seventh Circuit has repeatedly and unequivocally found that claimants in similar situations must exhaust their administrative remedies before proceeding to district court. *See Ctr. for Dermatology & Skin Cancer, Ltd.*, 770 F.3d at 586; *Michael Reese Hosp. & Med. Ctr.*, 427 F.3d at 436. Second, Plaintiffs' failure to exhaust their administrative remedies cannot be excused here, unlike the potential exception pondered in *Center for*

*Dermatology and Skin Cancer, Ltd.*, because the Plaintiffs have alternative administrative avenues to resolve their claims, and the 90-day deadline for ALJs to render their decisions is not mandatory. While in *AHA*, the D.C. Circuit found the deadlines for rendering administrative appeal decisions to be mandatory, this Court is persuaded that they are not when examining the comprehensive nature of the regulatory scheme as analyzed in the Fourth Circuit's recent opinion, *Cumberland County Hospital System, Inc.*, 816 F.3d at 48. There, the Fourth Circuit found that the Medicare Act does not guarantee an ALJ decision with 90 days but rather provides a "comprehensive administrative process—which includes deadlines and consequences for missed deadlines—that a healthcare provider must exhaust before ultimately obtaining review in the United States District Court." *Id.* at 50. By setting a 90-day deadline for ALJ decisions, Congress encouraged "the process to proceed expeditiously," but Congress also provided claimants the opportunity to escalate their administrative appeals and thus "anticipated that the 90–day deadline might not be met and provided its chosen remedy. . . . Congress clearly did not authorize healthcare providers to go to court at this stage of the administrative process." *Id.* at 55 (affirming the dismissal of a request for mandamus relief by a hospital system seeking to circumvent the administrative appeals process).

Additionally, *AHA* does not support the imposition of mandamus relief, as it distinguishes between cases involving challenges to the implementation of the administrative appeals process generally, and those that involve challenges to specific claims, like the Plaintiffs do here,[4] where relief would result in their claim "jump[ing] the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Id.* at 192. In these cases, the nature of their claims "foreclose the possibility of mandamus relief for such plaintiffs." *Id.*

---

[4] Plaintiff requests that the Court order the Secretary . . . to take immediate action to ensure that *plaintiff* and providers receive decisions from an ALJ on their appeals within 90 days of the receipt of a timely filing of a request for hearing. (Dkt. 1 at 12.)

Even if the Court were to assume jurisdiction over Plaintiffs' request for mandamus relief, the extreme remedy of mandamus is not appropriate because Plaintiffs "clearly have an adequate remedy in § 405(g) for challenging all aspects of the" overbilling determination through their option to escalate their claims. *Heckler*, 466 U.S. at 616. As discussed above, the Medicare Act not only provides a four-level appeals process, but also provides a process for claimants to escalate their claims to the district court if their appeal is not decided within the period outlined in the Medicare Act. Although escalating a claim to the DAB and then potentially proceeding in federal court is not identical to proceeding before an ALJ, it is an alternative and adequate avenue of relief, and it is an avenue of relief that Plaintiffs have not yet taken advantage of. Furthermore, and as described above, due to the available option of escalating their administrative appeal, Plaintiffs do not have a "clear right" to an ALJ decision within 90 days of receiving a request for an appeal. *See Cumberland Cty Hosp. Sys., Inc.*, 816 F.3d at 55-56 ("While the Act gives the Hospital System the clear and indisputable right to this administrative process, it does not give it a clear and indisputable right to adjudication of its appeals before an ALJ within 90 days.").

Lastly, the Court is convinced that issuing a writ of mandamus would unduly interfere with the regulatory process and cause "the judicial process to replace and distort the agency process." *Cumberland Cty. Hosp. Sys., Inc.*, 816 F.3d at 50.

## **CONCLUSION**

As a result of the foregoing, the Court finds that it does not have subject-matter jurisdiction to consider Plaintiffs' request for a preliminary injunction or a writ of mandamus.[5]

---

[5] During a hearing on November 28, 2016, the Court found that it lacked subject-matter jurisdiction over Plaintiffs' complaint and granted Defendants' motion to dismiss in open court. Plaintiffs' counsel then made an oral motion for reconsideration. The only new legal argument presented by Plaintiffs in support of their motion for reconsideration is that they should be excused from exhausting their administrative remedies because 42 C.F.R. §

12

Congress instituted a detailed and comprehensive regulatory scheme to hear their grievance. That regulatory scheme permits judicial review only after full compliance with the administrative appeals process and provides options to providers, like Plaintiffs, when delays in the process occur. In order to bring their suit in a United States District Court, Plaintiffs must first adhere to the administrative appeals procedures outlined in the Medicare Act.

Date: 11/30/2016

Virginia M. Kendall
U.S. District Court Judge

---

405.1132, the regulation that permits escalation to the district court, could potentially allow for a scenario where Plaintiffs are denied access to the district court even if they attempt to escalate their appeal. Plaintiffs argue that because the relevant regulation permits the DAB to remand the matter to an ALJ within five days of receiving a request for escalation, it is possible that the DAB could do so without the ALJ or DAB considering the substance of the appeal, placing a claimant in a bureaucratic appeals loop without hope of judicial review. When read in context, however, it is clear that the provision cited by Plaintiffs is intended to permit the DAB to have a final chance to issue a substantive ruling, or remand to an ALJ who made substantive findings, before claimants are allowed to escalate to federal district court. *See* 42 C.F.R. § 405.1126(a) (the DAB is permitted to remand a case to an ALJ where "*additional evidence* is needed or *additional action* by the ALJ is required") (emphasis added). This rule is not an outlet for Defendants to trap claimants in a bureaucratic quagmire that would effectively preclude judicial review. Additionally, Plaintiffs have failed to escalate their claim to the DAB level or the district court; if they did so and found themselves effectively precluded from judicial review by Defendants' misapplication of Section 1132, the Court would likely view their complaint differently. Because their motion for reconsideration otherwise was predicated on the arguments contained in briefs, it is denied for the reasons stated herein.